IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00408-FL

| | |
|---|---|
| **Retirement Committee**, et al., | |
| Plaintiffs, | |
| v. | **Memorandum and Recommendation** |
| **Janos Magasrevy**, | |
| Defendant. | |

This matter is before the court on Defendant Janos Magasrevy's Motion to Dismiss for Lack of Personal Jurisdiction. (D.E. 13.) Plaintiffs – the administrators of the Executive Retirement Plan of Thermal Ceramics Latin America ("Top Hat Plan"), the Morgan US Employees' Retirement Plan ("MUSE Plan"), and Thermal Ceramics Inc. ("TCI"), a Georgia-based company – argue that Magasrevy is subject to personal jurisdiction under ERISA's nationwide service of process provision because they are seeking appropriate equitable relief in an attempt to enforce ERISA and the terms of the plans. (D.E. 21.) Magasrevy claims that Plaintiffs are seeking legal relief that is not intended to enforce ERISA or plan terms and, therefore, they cannot rely upon ERISA to establish personal jurisdiction in the Eastern District of North Carolina.

When courts attempt to determine the nature of the relief a plan administrator seeks when bringing a suit against a beneficiary, they look to the nature of the underlying controversy between the parties. In cases such as this one, where the dispute relates to the beneficiary's entitlement to benefits, the relief is viewed as legal in nature. Thus, Plaintiffs are seeking legal relief and cannot establish this court's personal jurisdiction over Magasrevy through ERISA's

provisions allowing a fiduciary to pursue appropriate equitable relief. In light of the court's lack of personal jurisdiction over Magasrevy, it is recommended[1] that his Motion to Dismiss be granted.

## I.

At its core, this is a dispute over what benefits, if any, Magasrevy is entitled to receive from two benefits plans: (1) the Top Hat Plan, an unfunded employee benefit plan allegedly maintained primarily for providing deferred compensation for a select group of management or highly compensated employees of Thermal Ceramics de Venezuela ("TCV"), a Venezuelan company owned by TCI; and (2) the MUSE Plan, an employee benefit plan for TCI's employees.[2] (D.E. 21; Compl. ¶¶ 1, 2, 8, 9, 12, & 16.) TCV employed Magasrevy in an unspecified capacity from June 1, 1991 until December 8, 2012. (*Id.* at ¶ 9.) The circumstances surrounding his termination are disputed, with TCV claiming he was terminated as part of a corporate restructuring (*Id.* at ¶ 20) and Magasrevy claiming he was fired in order to deny him benefits under the Top Hat and MUSE Plans (Mem. in Supp. of Mot. to Dismiss at 4–5). The parties do not dispute, however, that Magasrevy unsuccessfully sought benefits from both plans following his termination. (*Id.* at ¶¶ 23-26.)

After Magasrevy threatened to sue in the Southern District of Florida to recover benefits from the Plans (*Id.* at ¶ 27), Plaintiffs initiated this declaratory judgment action in the Eastern District of North Carolina. TCI seeks a declaratory judgment from the court regarding the legality of Magasrevy's termination. (*Id.* at ¶ 32.) The Plan Administrators seek declarations regarding whether the Top Hat Plan is exempt from certain ERISA requirements (*Id.* at ¶ 34) and

---

[1] The court referred this matter for entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).
[2] Although Magasrevy did not work for TCI, at certain times it acted as TCV's payroll agent so that Magasrevy could receive compensation for his work in dollars instead of Venezuelan Bolivars. (Compl. ¶ 9.)

2

whether the MUSE Plan properly denied Magasrevy's benefits claim (*Id.* at ¶ 38). Magasrevy moved to dismiss this action, arguing that the court lacks personal jurisdiction over him because Plaintiffs have not brought a claim which allows them to invoke ERISA's nationwide service of process provision.

II.

A.

Magasrevy argues that he is entitled to be dismissed from this action because the court lacks personal jurisdiction over him. When a defendant challenges the court's personal jurisdiction, the burden is on the plaintiff to establish the existence of jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, if, as here, the motion is decided solely on the basis of the pleadings and affidavits, the plaintiff need only make a *prima facie* showing that the court has jurisdiction over the defendant. *Id.* In resolving a challenge to the court's personal jurisdiction on the papers, the court is to construe factual allegations in favor of the plaintiff and make all reasonable inferences in favor of finding jurisdiction. *Id.*

Plaintiffs claim that Magasrevy is subject to personal jurisdiction under ERISA's nationwide service of process provision, which allows service of process, among other places, "in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Parties asserting jurisdiction under this provision must also establish that the defendant has sufficient contacts with the United States as a whole to satisfy the Fifth Amendment's due process clause. *Longo v. Trojan Horse Ltd.*, 992 F. Supp. 2d 612, 617–18 (E.D.N.C. 2014).

ERISA's nationwide service of process provision, although broad in geographic scope, is limited in its applicability. It only authorizes a court to exercise personal jurisdiction over a

3

Case 5:14-cv-00408-FL   Document 32   Filed 02/04/15   Page 3 of 12

defendant if the plaintiff brings "a proper ERISA enforcement action – that is, if the court ha[s] subject matter jurisdiction over the action under [29 U.S.C.] § 1132(a)(3)." *Denny's, Inc. v. Cake*, 364 F.3d 521, 524 (4th Cir. 2004).[3] In this case, the relevant statutory provision is Section 502(a)(3)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(3)(B), which allows an ERISA fiduciary to bring an action to obtain "appropriate equitable relief" to "enforce" the terms of ERISA or a plan governed by it. As demonstrated by the briefs in this matter, courts are conflicted over what these terms mean when a fiduciary brings suit against a plan beneficiary.

B.

The court's analysis begins, and ultimately ends, by determining whether the declarations sought by Plaintiffs are legal or equitable in nature. Although parties may seek declaratory relief under Section 502(a)(3), *see Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142 (2d Cir. 1997), not every request for declaratory relief is equitable in nature. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 284 (1988) ("Actions for declaratory judgments are neither legal nor equitable . . . ."); *WEGCO, Inc. v Griffin Servs., Inc.*, 19 Fed. App'x, 68, 73 (4th Cir. 2001) ("[T]he fact that a claim is one for declaratory relief does not affect the legal or equitable character of the issues to be decided.").

The parties take starkly different positions on the question of whether Plaintiffs seek legal or equitable relief. Relying primarily on the Eleventh Circuit's opinion in *Gulf Life Insurance*

---

[3] Although the resolution of the issue of personal jurisdiction involves a determination of whether ERISA provides for subject matter jurisdiction over Plaintiffs claims, the court has subject matter jurisdiction over this controversy regardless of how it decides this question. The Fourth Circuit has explained that when a plaintiff preemptively brings a declaratory judgment action to snuff out the defendant's ability to bring a federal claim, "the proper jurisdiction question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001); *see Morgan County War Mem. Hosp. v. Baker*, 314 Fed. App'x. 529, 532-34 (4th Cir. 2008) (applying *Columbia Gas* in the context of an ERISA claim). Here, there is no question that Magasrevy could bring an affirmative claim against Plaintiffs regarding the circumstances surrounding his termination and his entitlement to past and future benefits. Thus, the court has subject matter jurisdiction over this matter regardless of whether ERISA authorizes the Plaintiffs' suit.

4

*Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987), Magasrevy argues that this action is legal in nature because the claim underlying the declaratory judgment action seeks a determination of the amount of benefits he is due. In *Gulf Life*, the Eleventh Circuit held that ERISA did not allow the district court to exercise personal jurisdiction over the defendant-beneficiary because the plaintiff sought legal relief in the form of a declaration of liability regarding a benefits claim. *Id.* at 1525. Accordingly, the court found that the fiduciary's action was not for "other equitable relief" and therefore did not qualify for Section 502's venue provision. *Id.* at 1523.

Although Plaintiffs do not directly address whether the relief they seek is equitable in nature, they argue that they can proceed under Section 502(a)(3) because they are not seeking a benefits determination, but instead are seeking declaratory relief confirming that they have complied with ERISA and asking the court to enforce their interpretation of plan terms. They rely on *Weinstein* and *Express Scripts, Inc. v. Eden Surgical Center*, Case No. 4:10-cv-01409, 2010 WL 4792115 (E.D. Mo. Nov. 18, 2010), for the proposition that a plan fiduciary may seek a declaratory judgment that it has complied with ERISA.

Although the Supreme Court has not addressed this question directly, it has made it clear that only a narrow set of remedies are available under Section 502(a). As a general matter, courts should be "'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). This reluctance stems from "ERISA's 'carefully crafted and detailed enforcement scheme [that] provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)) (emphasis in original). Under this statutory scheme, the term "'[e]quitable'

5

relief must mean *something* less than *all* relief." *Mertens*, 508 U.S. at 258 n.8 (emphasis in original). Instead, the equitable relief available under Section 502(a) is limited to "those categories of relief that were typically available in equity…." *Id.* at 248.

However, even when dealing with forms of relief that are traditionally considered equitable, the line between legal and equitable remedies can become blurred. For example, in *Great-West Life*, an ERISA plan brought a claim for injunctive and declaratory relief under Section 502(a)(3) against a beneficiary to recover amounts that it expended on the beneficiary's medical treatment. 534 U.S. at 207-08. The plan argued that its action was appropriately brought under Section 502(a)(3) because it was seeking restitution, a traditional form of equitable relief. *Id.* at 212.

In rejecting this argument, the Supreme Court noted that restitution could be considered an equitable remedy in certain circumstances and a legal remedy in others. *Id.* The distinction, the Supreme Court said, was to be drawn from "'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.* (quoting *Reich v. Continental Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)). Applying this reasoning, the Supreme Court held that the plan sought legal relief because it was seeking "to impose personal liability on [the beneficiaries] for a contractual obligation to pay money — relief that was not typically available in equity." *Id.* at 210.

Similarly, when lower courts have been asked to determine whether a fiduciary may properly bring a claim against a beneficiary under Section 502(a)(3), the decision has turned on the nature of the claim underlying the request for relief. *See Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249 (9th Cir. 1987) ("Defendant's contractual claim to benefits, the source of Transamerica's case, is clearly a legal one."); *Gulf Life Ins.*, 809 F.2d at 1523 ("But

6

Case 5:14-cv-00408-FL   Document 32   Filed 02/04/15   Page 6 of 12

for the Declaratory Judgment Act, the only way this action could have arisen is as a suit by Arnold to collect the severance pay he is due – a legal, not equitable, action."); *KLLM, Inc. Emp. Health Prot. Plan v. Ontario Cmty. Hosp.*, 97 F. Supp. 262 (S.D. Miss. 1996) (holding that a declaratory judgment claim was legal in nature because "it is apparent from Ontario's counterclaim that its claim to benefits is based on the contractual relationship between Meysenburg and the Plan…."); *Conn. Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F. Supp. 193 (D. Conn. 1993) ("The underlying controversies in this case are defendants' contractual claims to benefits…. Since a contractual claim to benefits is a legal claim, the declaratory judgment plaintiffs seek is a form of legal relief ….").

The Fourth Circuit has not explicitly addressed how it would determine whether a claim brought by an ERISA fiduciary qualifies as equitable or legal for purposes of Section 502(a)(3). In *Denny's Inc. v. Cake*, 364 F.3d 521 (4th Cir. 2004), however, it indicated that it is appropriate to look at the underlying nature of the dispute to determine if an ERISA claim is legal or equitable in nature. After distinguishing the case before it from the Eleventh Circuit's opinion in *Gulf Life*, the Court of Appeals supported its conclusion that it was addressing a claim for equitable relief by stating, "[m]oreover, the 'underlying controversy' here is 'equitable' in nature: an effort to force Denny's, via an injunction, to comply with California law." *Denny's*, 364 F.3d at 526 n.6.

Additionally, looking to the underlying nature of the controversy that gave rise to the lawsuit to determine the equitable or legal nature of the claim would be consistent with the Fourth Circuit's holdings when it has been asked to determine if a declaratory judgment claim is legal or equitable in any other contexts. *See In re Lockheed Martin Corp.*, 503 F.3d 351, 355 (4th Cir. 2007) (looking to the nature of the underlying action to determine the existence of a

right to jury trial in a declaratory judgment action); *Terry v. Chauffeurs, Teamsters and Helpers, Local 391*, 863 F.2d 334 (4th Cir. 1988) (same). In light of the holdings from other circuits, the Fourth Circuit's comments in *Denny's*, and its holdings in cases which have dealt with a similar question in a different context, the court will look to the underlying nature of the dispute between the parties to determine whether Plaintiffs seek legal or equitable relief.

C.

Although Plaintiffs attempt to cast this matter in terms of their compliance with ERISA and appropriate application of plan terms, the disputes between the parties center on Magasrevy's entitlement to benefits under the Top Hat and MUSE Plans. Adorning these benefits-related controversies with non-benefits-related labels does not change their underlying nature. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages* … the classic form of *legal* relief." (emphasis in original)); *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712 (4th Cir. 1996) ("Coyne's description of its claim as one for breach of Blue Cross's fiduciary duty does not alter the fact that it is seeking medical benefits which it claims are owed to Tyree."). A closer examination of each claim bears out the idea that they are related to Magasrevy's entitlement to benefits.

For example, TCI seeks a declaration that Magasrevy's termination did not violate Section 510 of ERISA. (D.E. 21; Compl. ¶ 32.) Section 510, codified at 29 U.S.C. § 1140, prohibits companies from taking adverse employment action against an employee either to interfere with the employee's ability to attain benefits or as a result of the employee exercising his right to receive benefits under an ERISA plan. This section, which is enforced through Section 502, exists to protect "rights about to be earned but frustrated due to unlawful employer

8

action, benefits earned but not paid, ... and future benefits earned but not yet due." *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir. 1991). If Magasrevy were to prevail on a Section 510 claim, he would be able to recover benefits that he was entitled to under the Plans had he not been improperly terminated. *Id.* Both the underlying statutory nature of the claim and the relief that Magasrevy would be entitled to demonstrate that this claim relates to his entitlement to benefits and, therefore, is legal in nature.

The Top Hat Plan's declaratory judgment claim arises from Magasrevy's challenge to the denial of his benefits claim. (D.E. 21; Compl. ¶¶ 27, 34-36.) The nature of the dispute focuses on whether the Top Hat Plan is subject to many of ERISA's substantive requirements, including its funding, vesting, and distribution provisions. (*Id.* at ¶¶ 34–36.) As Magasrevy participated in the Top Hat Plan, Top Hat Dec. ¶ 11, the question of whether ERISA's substantive provisions apply to the plan impacts his entitlement to benefits and the Top Hat Plan's liability for them. The dispute between Magasrevy and the Top Hat Plan is legal, not equitable, in nature.

The MUSE Plan's claims for declaratory relief most directly relate to the issue of Magasrevy's entitlement to benefits. Each declaratory judgment the MUSE Plan requests seeks a confirmation of the grounds for denial of Magasrevy's claim for benefits. (D.E. 21; Compl. ¶ 39.) Thus, these requests deal with the MUSE Plan's individual liability to Magasrevy for benefits and are legal, not equitable in nature.

As Plaintiffs' requests for declaratory judgment are all legal in nature, they cannot be the basis for a claim of "appropriate equitable relief" under Section 502(a)(3). The inability to establish a viable claim under Section 502(a)(3) precludes Plaintiffs from relying upon Section 502(e) to establish personal jurisdiction over Magasrevy. Given that ERISA's nationwide service of process provision was the sole basis asserted by Plaintiffs for the exercise of personal

9

jurisdiction (Compl. ¶ 7), they have failed to make a *prima facie* showing that the court has personal jurisdiction over Magasrevy.

D.

While Plaintiffs do not explicitly address whether the relief they seek is equitable in nature, they assert that the court may exercise personal jurisdiction in this case because a fiduciary may seek declaratory relief under Section 502(a)(3) to confirm that a plan has complied with ERISA and its own terms. While this proposition appears to be true in certain types of cases, the underlying controversies in this case are wholly different from the controversies in the cases Plaintiffs rely upon. Given the importance of the specific nature of the dispute between the parties to the personal jurisdiction analysis, these cases do not persuade the court that it may properly exercise personal jurisdiction over Magasrevy.

Plaintiffs rely upon *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139 (2d Cir. 1997), and *Express Scripts, Inc. v. Eden Surgical Center*, Case No. 4:10-cv-01409, 2010 WL 4792115 (E.D. Mo. Nov. 18, 2010), for the proposition that a plan administrator may utilize Section 502(a)(3) to obtain a declaratory judgment confirming that the administrator's interpretation of ERISA's disclosure requirements were consistent with the law's requirements. (Mem. in Opp. to Mot. to Dismiss at 9-10.) In each case, the underlying controversy was whether ERISA required a fiduciary to produce certain plan-related documents. *Weinstein*, 107 F.3d at 140 ("[T]he Administrators commenced the present action, requesting a declaratory judgment that ERISA does not require them to disclose actuarial valuation reports to Plan participants."); *Express Scripts*, 2010 WL 4792115 at *1 ("Plaintiff seeks declaratory relief that it has provided all of the documents required by" ERISA).

10

This type of relief is much more akin to a traditional form of equitable relief than the benefits-related determination requested here. *See* 4 S. Symons, Pomeroy's Equity Jurisprudence § 1411 (5th ed. 1941) (discussing specific enforcement of obligations arising from trusts and fiduciary relations). In both *Weinstein* and *Express Scripts*, the court enforced the fiduciary's understanding of its obligations under ERISA in the face of what would otherwise have been an equitable suit to compel the production of documents. *See Express Scripts*, 2010 WL 4792115, at *3 (finding defendant's argument that the true nature of the suit was legal rather than equitable because the failure to provide documents could be subject to civil fines to "speculative"). Plaintiffs have not convinced the court that they will face a similar equitable lawsuit if Magasrevy were to institute suit against them. Thus, the reasoning in *Weinstein* and *Express Scripts* cannot be utilized to establish that this court may properly exercise personal jurisdiction over Magasrevy under Section 502(a)(3).

### III.

In order to maintain personal jurisdiction over Magasrevy in this action, Plaintiffs must demonstrate that they are seeking appropriate equitable relief to enforce the terms of ERISA or an ERISA plan. In order to determine whether the Plaintiffs' claims are legal or equitable in nature, the court must scrutinize the nature of the controversy underlying the dispute between the parties. Although the Plaintiffs attempt to cast their claims as equitable in nature, the fact that these claims ultimately focus on Magasrevy's entitlement to benefits makes them legal in nature. As Plaintiffs are seeking legal and not equitable relief, they cannot rely on ERISA to establish this court's personal jurisdiction over Magasrevy. In light of this determination, the court lacks personal jurisdiction over Magasrevy. Accordingly, it is recommended that Magasrevy's Motion to Dismiss be granted.

Dated: February 4, 2015.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE