IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-408-FL

| | |
|---|---|
| RETIREMENT COMMITTEE, PLAN ADMINISTRATOR OF EXECUTIVE RETIREMENT PLAN OF THERMAL CERAMICS LATIN AMERICA; RETIREMENT COMMITTEE, PLAN ADMINISTRATOR OF MORGAN US EMPLOYEES' RETIREMENT PLAN; and THERMAL CERAMICS INC., individually and in its fiduciary capacity with respect to EXECUTIVE RETIREMENT PLAN OF THERMAL CERAMICS LATIN AMERICA,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>JANOS MAGASREVY,<br><br>　　　　　　Defendant. | ORDER |

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction (DE 13). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the motion to dismiss be granted. Plaintiffs filed objections to the M&R, and defendant responded. In this posture, the issues raised are ripe for ruling. For the following reasons, the court adopts the recommendation of the M&R, albeit on different grounds, and grants the motion to dismiss.

## BACKGROUND

Plaintiffs commenced this action on July 18, 2014, seeking declaratory judgment regarding issues in controversy between plaintiffs and defendant, who is a former executive of Thermal Ceramics de Venezuela ("TCV"), a Venezuelan entity affiliated with defendant Thermal Ceramics Inc. ("TCI"). Plaintiffs seek judicial declaration regarding certain rights and obligations of the parties, under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiffs claims arise out of defendant's termination from TCV and his alleged entitlement to retirement benefits, under benefit plans administered by defendant Retirement Committee, Plan Administrator of Executive Retirement Plan of Thermal Ceramics Latin America ("Top Hat Plan Administrator"), and defendant Retirement Committee, Plan Administrator of Morgan US Employees' Retirement Plan ("MUSE Plan Administrator").

According to the complaint, on February 10, 1987, defendant was hired by Fibras Ceramicas C.A., a Venezuelan entity. Fibras Ceramicas C.A. was acquired by TCI in June 1991 and later renamed TCV. TCI is a Delaware corporation with its principal place of business in Augusta, Georgia. From June 1, 1991 until December 8, 2012, defendant was an employee of TCV and provided services to TCV. As an accommodation to defendant, TCI acted as a payroll agent for TCV so that defendant would receive a percentage of his compensation for his services to TCV in U.S. dollars, a more stable currency than the Venezuelan currency.

In September 1999, defendant was notified that he was eligible to participate in the Executive Retirement Plan of Thermal Ceramics Latin America (referred in the complaint in shorthand as the "Top Hat Plan"). The Top Hat Plan was established and is maintained by TCI for the benefit of certain employees of "participating companies" in the same controlled group as TCI. TCV is a

participating company in the Top Hat Plan. The Top Hat Plan is unfunded, but it contemplates the use of a certain type of trust, referred in the complaint as a "rabbi trust," to provide benefits under the Top Hat Plan. TCI has maintained the Top Hat Plan for the purpose of providing deferred compensation to select senior management employees of participating companies. Plaintiff Top Hat Plan Administrator is a committee with a principal place of administration in Raleigh, North Carolina.

The Top Hat Plan provides that if a participant is terminated for any reason other than retirement, early retirement, death or disability, the participant is not entitled to benefits under the Top Hat Plan. "Retirement," as defined by the Top Hat Plan, requires a participant to be age 65 and have 15 years of credited service. "Early retirement," as defined by the Top Hat Plan, requires a participant to be age 60 and have 20 years of credited service.

Starting in 2005, TCV began paying compensation to defendant, through TCI, in U.S. dollars, as reflected in "W-2" tax forms. At that time, defendant began to accrue "benefit service" under the Morgan US Employees' Retirement Plan (referred in the complaint in shorthand as the "MUSE Plan"). The MUSE Plan is an employee pension benefit plan that covers employees of Morganite Industries, Inc., and employees of certain other entities affiliated with Morganite Industries, Inc., including TCI. Plaintiff MUSE Plan administrator is a committee with a principal place of administration in Raleigh, North Carolina. Defendant continued to accrue "benefit service" under the MUSE Plan for about four years until September 2009, when the accrual of benefit service was frozen for a group of plan participants, including defendant. At that time, defendant's monthly benefit to be paid at his normal retirement age of 65 is $170.06.

3

TCV terminated defendant's employment on or around December 8, 2012, when he was 58 years old, and at such time, he ceased to have any further relationship with TCV or any affiliated entity including TCI. Plaintiffs assert that defendant's employment was terminated by TCV as part of a corporate restructuring, unrelated to any retirement benefits. At the time of his termination, defendant was not yet 60 years old, and plaintiffs assert his termination was not due to retirement, early retirement, death or disability. Plaintiffs assert that under the terms of the Top Hat Plan, defendant was not entitled to benefits regardless of his years of credited service, and that defendant is entitled to only four years of service credit under the Muse Plan.

Defendant was not paid any benefit under the Top Hat Plan following his termination. On September 30, 2013, defendant made a claim for benefits under the Top Hat Plan. Plaintiff Top Hat Plan Administrator reviewed the claim and determined that defendant was not entitled to benefits under the terms of the Top Hat Plan. This claim denial was reported to defendant on December 16, 2013, and affirmed on March 7, 2014 following further appeal.

On September 20, 2013, defendant made a claim for benefits under the MUSE Plan, asserting that he had accumulated more than the four years of benefit service under the MUSE Plan that was reported to him on a statement of his MUSE Plan benefits. Plaintiff MUSE Plan Administrator reviewed the claim and determined that the statement of benefits, including the total benefit service reflected there, was correct and in accordance with the terms of the MUSE Plan. This claim denial was reported to defendant on December 16, 2013, and affirmed on March 7, 2014 following further appeal.

Despite the denial of his appeals by plaintiff MUSE Plan Administrator and plaintiff Top Hat Plan Administrator, respectively, defendant is continuing to pursue his claims for benefits under the

4

MUSE Plan and the Top Hat Plan, and has threatened litigation over those claims for benefits. Defendant has also threatened litigation as to whether his termination was lawful, including whether he was terminated for the purpose of interfering with his attainment of any right to which he may become entitled under the provisions of the Top Hat Plan, the MUSE Plan, or ERISA.

Plaintiffs seek through their complaint a judicial declaration on three issues, which may be summarized as follows:

1. Termination of defendant's employment[1] was not for the purpose of interfering with defendant's attainment of any right to which he may become entitled under the provisions of the Top Hat Plan, the MUSE Plan or ERISA.

2. The Top Hat Plan is unfunded and maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and thus it is except from certain ERISA requirements.

3. Plaintiff MUSE Plan Administrator correctly determined that defendant's benefit service for purposes of the MUSE Plan began in November 2005.

Defendant filed his motion to dismiss for lack of jurisdiction on September 2, 2014, asserting that he is a resident of Florida, and that plaintiffs cannot take advantage of ERISA's nationwide service of process provision under the circumstances of this case. In support of his motion to dismiss, defendant includes a declaration wherein he asserts his understanding regarding his

---

[1] Plaintiffs assert at paragraph 19 of the complaint that TCV terminated defendant's employment. In their summary of relief requested, plaintiffs request a declaration regarding "TCI's termination of [defendant's] employment." (Compl. p. 10). Viewed in the light most favorable to plaintiffs, the court construes the relief sought as a declaration that termination of defendant, by either TCI or TCV, was not unlawful. The court need not resolve the substantive issue of which of the two entities terminated plaintiff for purposes of the instant order.

employment status with TCI and his terms of compensation. Defendant also asserts that in November 2003, he relocated from Venezuela to Florida, where he continued working as TCV's general manager, performing duties for TCI in both Venezuela and Florida. Defendant asserts that he obtained permanent residency in Florida in November 2005. He asserts that he has never worked or lived in North Carolina, and has not property or business interests in North Carolina.

Defendant also includes a declaration by an attorney, Michael G. Monnoly ("Monnoly"), who asserts he is representing defendant with respect to claims under the Top Hat Plan and MUSE Plan. Monnoly asserts that counsel for defendant sent a letter to TCI, enclosing a draft of a complaint asserting claims under these plans, which indicated that if a civil action was filed it would be venued in the Southern District of Florida (hereinafter "draft Florida complaint").[2]

Plaintiffs responded in opposition to the motion to dismiss on September 26, 2014. In support of their response, plaintiffs filed two declarations by Fred Wollman ("Wollman"), president of Morganite Industries, Inc., and chairman of the committee constituting the plaintiff Top Hat Plan Administrator and MUSE Plan Administrator, enclosing plan documents. Wollman also describes in more detail the claims for relief that defendant asserted in the draft Florida complaint regarding the Top Hat Plan, as follows:

> the first claim for relief in [the draft Florida complaint] alleges that TCI terminated his employment to prevent him from obtaining benefits, if any, under the Top Hat Plan in violation of Section 510 of [ERISA], but [defendant] was in fact terminated by TCV, not TCI. [The] second claim alleges that the Top Hat Plan does not qualify as an exempt unfunded plan under ERISA, but rather is subject to ERISA's funding, accrual and vesting provisions. In his third claim for relief, he seeks to compel TCI

---

[2] The draft Florida complaint is not in the record. However, as set forth below, plaintiffs further describe the contents of the draft Florida complaint in response to the motion. Defendant also provides further details regarding the types of claims in controversy as asserted by his counsel following denial of his claims for benefits under the Top Hat Plan and MUSE Plan.

6

> to establish a trust for the Top Hat Plan and to fund that trust to provide him with an early retirement benefit.

(DE 19, ¶20). Regarding the MUSE Plan, in the draft Florida complaint, defendant "contends that TCV and/or TCI have miscalculated the number of years of benefit service for which he should be credited under the MUSE Plan because certain service was not counted for TCV, a Venezuelan entity that did not participate in the MUSE Plan." (DE 20, ¶24).

The court referred the matter to magistrate judge, who heard oral argument and entered M&R on February 4, 2015. Plaintiffs filed objections to the M&R, and defendant filed a response which includes a declaration of Nwabundo E. Ume-Nwagbo, another attorney who represented defendant in pursuit of his claims against TCI, who attaches further correspondence detailing the underlying controversy between defendant and plaintiffs. Plaintiffs replied to this response on April 3, 2015.

**COURT'S DISCUSSION**

A.   Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir.2014). Where a defendant disputes jurisdiction through affidavits or otherwise, a plaintiff may not rest on mere conclusory allegations. See McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir.1983). Rather, a plaintiff must come forward with affidavits or other evidence to counter the defendant's arguments. See id. (affirming dismissal under Rule 12(b)(2) where, "[a]gainst the defendants' affidavits," a plaintiff "offered nothing beyond his bare allegations that the defendants had . . . significant contacts" with the forum state). In addressing personal jurisdiction in light of allegations in the complaint, affidavits, or other materials in the record, "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993); see Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989) ("[The court] must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.").

B.      Analysis

"ERISA contains a nationwide service of process provision that permits an ERISA enforcement action to be brought in federal court in a district 'where the plan is administered' and process to be 'served in any other district where a defendant resides or may be found.'" Denny's, Inc. v. Cake, 364 F.3d 521, 524 (4th Cir. 2004) (quoting 29 U.S.C. § 1132(e)(2)). Accordingly, since the plans at issue in this case are administered in Raleigh, North Carolina, and defendant has been served in the Southern District of Florida, this court "would have personal jurisdiction over the

[defendant] under § 1132(e)(2) <u>if</u> this is a proper ERISA enforcement action – that is, if the court had subject matter jurisdiction over the action under § 1132(a)(3)." Id. (emphasis in original).

Section 1132(a)(3) provides in pertinent part that a "fiduciary," such as plaintiffs in this case,[3] may bring an ERISA enforcement action in federal court:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) <u>to obtain other appropriate equitable relief</u> (i) to redress such violations or (ii) <u>to enforce any provisions of this subchapter or the terms of the plan</u>.

§ 1132(a)(3) (emphasis added). "Section 1132(a)(3)(B) thus permits an ERISA fiduciary to bring an action to 'enforce any provisions of this subchapter,'" which comprises Title I of ERISA, or 29 U.S.C. §§ 1001 to 1191. <u>Denny's</u>, 364 F.3d 524-25. For example, in <u>Denny's</u> a fiduciary brought an action for declaratory and injunctive relieve to enforce ERISA's preemption provision, 29 U.S.C. § 1144, against the California Labor Commissioner. <u>See</u> <u>id.</u> at 525.

In this case, plaintiffs' assertion of the nationwide service of process provision fails because plaintiffs have not brought an action to "enforce any provisions" of Title I of ERISA. § 1132(a)(3)(B)(ii). Indeed, unlike in <u>Denny's</u> plaintiffs have not identified any particular provision of ERISA that they are enforcing through the instant action. Although the Fourth Circuit has not addressed directly the issue presented in this case, the Eleventh Circuit in <u>Gulf Life Insurance Co. v. Arnold</u>, 809 F.2d 1520 (11th Cir. 1987), held that a fiduciary's declaratory judgment action to determine the extent of its liability is not an action that enforces ERISA. There, the court reasoned that "[t]he purpose essential to section 1132(a)(3)(B) is to enforce the terms of the plan or ERISA; all [the plaintiff] need do to enforce the terms of the plan, assuming it contends the claim for benefits

---

[3] Defendant argues in response to plaintiffs' objections that TCI is not a fiduciary under the Top Hat Plan, because it is an unfunded plan, which argument plaintiffs vigorously oppose. The court assumes, without deciding, that plaintiffs are all fiduciaries as referenced in § 1132(a)(3).

9

is invalid, is deny payment." Id. at 1523. The same is true here, where plaintiff has already done all it needs to do to enforce ERISA or the terms of the plan, according to its interpretation of the terms of the plan, by denying and limiting benefits thereunder.

"Moreover, an action 'to enforce' means an action to compel someone to do something or not to do something, such as make contributions, that ERISA or the plan requires be done or not done." Id. In Denny's, the Fourth Circuit recognized this important feature of an enforcement action, expressly distinguishing a case such as Denny's where the plaintiffs sought an injunction, from Gulf Life, where no injunction was sought. See Denny's, 364 F.3d at 526-27 n. 6 (citing Gulf Life, 809 F.2d at 1523). The court also recognized that "an action seeking only a declaratory judgment that the Plan is an ERISA plan would not enforce or remedy a violation of ERISA or the Plan," and thus "it could not be brought under § 1132(a)(3)." Id. at 525 n. 3; see also NGS Am., Inc. v. Jefferson, 218 F.3d 519, 525 (6th Cir. 2000) ("Cases of fiduciaries suing beneficiaries are rare . . . comprising a few cases of suits to recover from a beneficiary money that should not have been paid out, or to recover from a beneficiary who made a misrepresentation to the ERISA plan, such as in application to join the plan."); cf. Provident Life & Acc. Ins. Co. v. Waller, 906 F.2d 985, 988 nn. 5-6 (4th Cir. 1990) (allowing suit under ERISA for unjust enrichment by a fiduciary against a beneficiary who refused to reimburse a plan for benefits).

Here, the instant action is not a suit to compel defendant to do anything. Likewise, the claim seeking a declaration as to the status of the Top Hat Plan as an ERISA plan does not enforce or remedy a violation of ERISA or the plan. Therefore, the instant action does not constitute an action to "enforce" ERISA or the terms of the plan within the meaning of § 1132(a)(3)(B).

10

Furthermore, plaintiff's action does not constitute a suit to obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3) (emphasis added). "[E]ven if the redress sought . . . under ERISA § 502(a)(3) is a classic form of equitable relief, it must be appropriate under the circumstances." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 385 (4th Cir. 2001). "[C]ourts, in fashioning 'appropriate' equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others." Varity Corp. v. Howe, 516 U.S. 489, 515 (1996).

In this respect, although the Fourth Circuit has not addressed circumstances presented here, the Eleventh Circuit has held that "Congress did not intend ERISA fiduciaries to use declaratory judgment actions to determine the benefit rights of participants/beneficiaries." Gulf Life, 809 F.2d at 1524. Similarly, the Sixth Circuit has observed that "it would not enforce ERISA's purpose to allow such declaratory actions against beneficiaries, especially insofar as it opens the door to procedural fencing and circumventing a plaintiff's chosen form." NGS, 218 F.3d at 528 (emphasis added); cf. Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) ("District courts should consider whether the declaratory judgment action is being used merely as a device for procedural fencing - that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.") (internal quotations omitted); Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978) ("When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum.").

This case presents such an instance of use by plaintiff of the declaratory judgment action for procedural fencing. Defendant's attorney sent TCI a letter on July 1, 2014, enclosing a draft

11

complaint against TCI, the Top Hat Plan, and the MUSE Plan, asserting claims for improper termination under ERISA, contesting his denial of benefits under the plans, and seeking benefits under the plans. (DE 19 ¶20; DE 20 ¶¶23-24). This letter indicated that if defendant filed a civil action, it would be venued in the Southern District of Florida, which is where defendant Magasrevy resides. (DE 13-3 ¶3). Less than three weeks later, on July 18, 2014, plaintiffs commenced this declaratory action in this district, for purposes of resolving the controversy raised in the first place by defendant, but in a district where defendant would not otherwise be subject to personal jurisdiction absent ERISA's nationwide service of process provision. As such, the action ostensibly was filed to gain a procedural advantage over defendant.

Plaintiffs have not cited, and the court has not found, any case in which a court in the Fourth Circuit has sanctioned such a course of action. Plaintiffs argue that the Second Circuit's decision in Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 140 (2d Cir. 1997) supports their position. But Weinstein, which allowed a fiduciary to pursue a declaratory judgment action against a plan participant, is inapposite for several reasons. First, Weinstein did not address application of the ERISA nationwide service of process provision, and personal jurisdiction was not an issue in the case. Id. at 140-141. As such, the court did not have occasion to address whether the declaratory judgment action sought appropriate equitable relief, in consideration of the issues raised in Gulf Life, NGS, and in the instant case. See id. In any event, the fiduciary in Weinstein sought a declaration regarding its "disclosure obligation under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4)," and whether it was subject to "monetary penalties . . . for nondisclosure," under 29 U.S.C. § 1132(c)(1). Id. at 141. The underlying controversy did not involve a beneficiary seeking benefits under an ERISA plan, but rather an individual seeking to review "actuarial

12

valuation reports." Id. at 140. In sum, Weinstein has little persuasive value in determining personal jurisdiction in the present matter.

Accordingly, plaintiffs' declaratory judgment action is not a suit for appropriate equitable relief. In so holding, the court need not reach the alternative basis for dismissal, asserted in the M&R and objected to by plaintiffs, that the underlying claims in controversy do not in any respect constitute claims for equitable relief.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss (DE 13). This action is DISMISSED for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

SO ORDERED, this the 26th day of August, 2015.

LOUISE W. FLANAGAN
United States District Judge